Filed 5/12/25; Certified for Publication 5/15/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| RYAN HOLMAN, | C101517 |
| Plaintiff and Appellant, | (Super. Ct. No. 20CV00578) |
| v. |  |
| COUNTY OF BUTTE, |  |
| Defendant and Respondent. |  |

Plaintiff Ryan Holman appeals from an order granting summary judgment in favor of defendant County of Butte (the County).

Holman sued the County under Government Code section 815.6, claiming that it breached mandatory duties related to the evaluation, investigation, and cross-reporting of a referral alleging child abuse perpetrated against Holman. (See *Holman v. County of Butte* (2021) 68 Cal.App.5th 189, 192-193 (*Holman*).) The trial court granted summary judgment in favor of the County, concluding that the undisputed facts showed that its employee was exercising his discretion when he decided to "evaluate out" the referral,

1

meaning to close it without conducting an in-person investigation or cross-reporting it to other government agencies.  Thus, even if the employee erred in his evaluation of the referral, his decision is protected by discretionary immunity.

Holman appeals, contending that the trial court erred because the County's duties were mandatory, not discretionary, and there are triable issues of fact about whether the County fully performed its mandatory duties.  We agree and therefore reverse the judgment.

BACKGROUND LEGAL PRINCIPLES

The Child Abuse and Neglect Reporting Act (CANRA; Pen. Code,[1] § 11164 et seq.) was enacted to protect children from abuse and neglect through a comprehensive reporting scheme aimed at identifying and protecting children who are being abused or neglected.  (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 174 (*San Bernardino*); *Ferraro v. Chadwick* (1990) 221 Cal.App.3d 86, 90; §§ 11166.3, subd. (a), 11164, subd. (b).)  To achieve its purpose, CANRA imposes a mandatory reporting requirement on certain individuals, known as " 'mandated reporters' " whose duties bring them into contact with children on a regular basis.  (*San Bernardino,* at pp. 178, 185; § 11165.7, subd. (a).)  Under section 11166, subdivision (a), a mandated reporter must make a report to a law enforcement agency or a county welfare department "whenever the mandated reporter, in [a] mandated professional capacity or within the scope of . . . employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect."  (§ 11166, subd. (a).)

As defined in CANRA, the term " 'child abuse or neglect' " includes "physical injury . . . inflicted by other than accidental means upon a child by another person," "the willful harming or injuring of a child or the endangering of the person or health of a

---

[1]     Undesignated section references are to the Penal Code.

2

child, as defined in Section 11165.3," and "unlawful corporal punishment or injury as defined in Section 11165.4." (§ 11165.6.)

Section 11166 requires only that mandated reporters *report* suspected child abuse or neglect. (*San Bernardino, supra*, 62 Cal.4th at p. 188.) Once a report is made, it is the responsibility of various child protective agencies to investigate the report and determine whether abuse occurred. (*Id*. at pp. 188, 190-191, 193, 196; *Planned Parenthood Affiliates v. Van De Kamp* (1986) 181 Cal.App.3d 245, 259 (*Planned Parenthood*).) Section 11165.9 identifies the agencies designated to receive and investigate such reports. They include the local law enforcement agency and " 'county welfare department.' " (*San Bernardino*, at p. 191; §§ 11165.9, 11166, subd. (d)(3)(C), 11166.3; Cal. Code Regs., tit. 11, § 900.)

In addition, the agency receiving the initial report of suspected abuse or neglect must share the report with its counterpart child protective agencies by means of a system of cross-reporting. (*Planned Parenthood, supra*, 181 Cal.App.3d at p. 259; *San Bernardino*, *supra,* 62 Cal.4th at pp. 178, 190, 194.) For example, an initial report to a county welfare department must be shared with the local police or sheriff's department, and vice versa. (*Planned Parenthood,* at p. 259; § 11166, subds. (j) & (k).)

BACKGROUND FACTS AND PROCEDURE[2]

A.    *Holman's Complaint*

Holman commenced this action by filing a complaint for damages against the County in February 2020. (*Holman, supra*, 68 Cal.App.5th at p. 193.) After a successful

---

[2]    In the proceedings below, the trial court sealed certain records discussed in this case, which were also filed under seal in this court. As a result, the parties filed both redacted and unredacted versions of their appellate briefs, with the unredacted versions filed under seal. We have avoided reciting any facts from the sealed portions of the record in this opinion, hence, we are filing the opinion without redactions. (Cal. Rules of Court, rule 8.46(g)(1) & (2).) All further rule references are to the California Rules of Court.

demurrer and several amendments, Holman filed the operative fourth amended complaint (the complaint), which alleges the following facts:

Holman was born in January 1992. During his adolescence, Holman lived in Butte County, California, under the care and supervision of his "abusive parents." In 2004, when Holman was 12 years old, Holman's father "began a pattern of physically and emotionally abusing [Holman's] mother . . . in the presence of [Holman]. This included striking [her] with fists, shouting at her, using insults and vulgar and abusive language, and other forms of physical and emotional abuse."

In 2006, when Holman was 14 years old, "his parents began . . . a pattern of physical abuse against [him]," which included "striking him with fists, attempting to kick him, other physical abuse, and threatening him with violence and retaliation." Holman was subjected to such abuse "continuously for approximately two years until . . . April 2008." During the course of this abuse, Holman's parents "intentionally and maliciously threatened [Holman] with great bodily harm, causing [him] to be in constant fear for his life, and inflicted injury on [him] through intentional, violent, unjustified, harmful, and offensive physical contact without [his] consent."

On May 8, 2006, the County's Health and Human Services Agency (the County welfare department) received a report of suspected child abuse from Holman's teacher (the May 2006 referral or report), a mandated reporter under section 11165.7, subdivision (a)(1). Holman alleges that, based on the allegations in the report, the County welfare department should have conducted some form of an in-person investigation. Instead, the County "evaluated out" the May 2006 referral, without any investigation.

The complaint alleges two causes of action under Government Code section 815.6, which renders a public entity liable for injury caused by its failure to discharge a mandatory duty. The first cause of action claims that the County negligently failed to perform a mandatory duty under Welfare and Institutions Code sections 328 and 16504 to evaluate and investigate the "substantiated" report of child abuse. The second cause of

4

action alleges that the County breached a mandatory duty under section 11166, subdivision (j), by failing to cross-report the allegations of abuse to local law enforcement and the district attorney's office. As a proximate result of these violations, the complaint alleges that Holman suffered "years of physical and emotional abuse" that otherwise could have been prevented, leading to "post-traumatic stress disorder, obsessive-compulsive disorder, anxiety disorder(s), [and] depression," requiring professional treatment and counseling for the rest of Holman's life. The complaint seeks compensatory damages in an amount according to proof.

B.     *The County's Summary Judgment Motion*

The County filed a motion for summary judgment on the complaint. In support of the motion, the County relied on a collection of exhibits, which included portions of the State Department of Social Services Manual of Policies and Procedures for Child Welfare Services, Division 31 Regulations, Manual Letter No. CWS-93-01, (July 1, 1993), pages 52-79.7 (the DSS Manual); the May 2006 referral; the County's "Structured Decision Making Hotline Tools," application guide of procedures and forms; and a County welfare department's Emergency Response Referral Information form dated May 9, 2006. The County's exhibits also included a declaration and an excerpt of the deposition testimony from the intake social worker, Bee Lee; a declaration and an excerpt of the deposition testimony from the County's "person most knowledgeable" about training social workers, Erin Sweet; and an excerpt of the transcript of the videotape deposition from the mandated reporter.

The County argued that its evidence established the following undisputed facts:

In responding to reports (referrals) involving suspected child abuse, social workers follow the DSS Manual. According to section 31-101.1 of the DSS Manual in effect in 2006, the County was required to respond to "all referrals for service which allege that a child is endangered by abuse, neglect or exploitation." Under section 31-101.3 of the DSS Manual, a county social worker "shall respond" to a referral by one of the following

5

methods: "[c]ompleting an Emergency Response Protocol, as described in Section 31-105[,]" "[c]onducting an in-person immediate investigation, as described in Section 31-115[;]" or "[c]onducting an in-person investigation initiated within 10 calendar days from the date the referral was received, as described in Section 31-120."

Section 31-105 of the DSS Manual governs the "Emergency Response Protocol" process. (Boldface & some capitalization omitted.) It provides: "The social worker shall immediately initiate and complete the Emergency Response Protocol process when it is necessary to determine whether an in-person investigation is required. The social worker shall record all available and appropriate information on the Emergency Response Protocol form, SOC 423 (10/92), or an approved substitute." (DSS Manual, § 31-105.1.) Among other things, the form must include "[d]ecision criteria" related to the determination of whether an in-person investigation is necessary. (DSS Manual, § 31-105.115.)

In accordance with the Emergency Response Protocol process, "an intake social worker conducts an initial evaluation of risk to determine whether an in-person response is appropriate." During this initial evaluation, "the intake social worker engages in a decision-making process and determines if the allegations rise to the level of abuse and neglect to warrant an in-person investigation." "Intake social workers utilize the [DSS Manual] section 31 regulations and the Structured Decision Making tools to guide their assessment," and "document their conclusions in the Emergency Response Protocol form." "Based on their conclusions during the initial evaluation of risk, the intake social worker will either 'evaluate out' the referral or assign it for an in-person investigation."

In this case, a mandated reporter called the County welfare department in May 2006 to make a child abuse referral relating to Holman. The mandated reporter spoke to intake social worker Lee. The mandated reporter subsequently completed a written "Suspected Child Abuse Report."

Lee performed an initial evaluation of the referral using the "Structured Decision Making Hotline Tools" as a guide. The fact that Lee did not check certain boxes on the Structured Decision Making Hotline Tools form did not mean it was incomplete. Lee intentionally did not check those boxes because, in his discretion, he determined the allegations did not meet the definitions of abuse. Accordingly, Lee "evaluated out" the referral and characterized it as a "substantial risk."

Lee did not personally contact Holman or his parents before deciding to "evaluate out" the May 2006 referral. Lee documented his decision to "evaluate out" the referral using an "Emergency Response Referral Information" form. Lee's supervisor approved the decision. Because the referral was "evaluated out," Lee did not cross-report the allegation to local law enforcement.

Based on these "undisputed" facts, the County argued that Holman's first cause of action fails because (1) the County fulfilled its mandatory duty to perform an initial evaluation and determine whether an in-person investigation was appropriate, and (2) the County is entitled to discretionary immunity for its decision to "evaluate out" the May 2006 referral without conducting an in-person investigation.

The County argued that the second cause of action fails because section 11166, subdivision (j), does not confer a private right of action, and because there is no mandatory duty to cross-report a referral where the social worker has determined the allegations do not meet the definitions of abuse or neglect.

C.      *Holman's Opposition to the Summary Judgment Motion*

In opposition to the summary judgment motion, Holman relied on much of the same evidence as the County: The May 2006 referral, portions of the DSS Manual, county forms and training materials, and excerpts of depositions from Lee, Sweet, and the mandated reporter. However, Holman generally disputed the County's interpretation of the evidence and/or its legal significance. According to Holman, the evidence shows:

7

On or about May 4, 2006, the mandated reporter called the County to report suspected child abuse involving Holman. The mandated reporter testified about the circumstances giving rise to her duty to report. The mandated reporter also stated that she immediately stepped away to call child protective services while Holman and his mother waited. The mandated reporter also testified about what she reported over the phone.

Lee documented the information relayed to him by the mandated reporter in an Emergency Response Referral Information form. In the form, Lee wrote down observations gained from the interaction with the mandated reporter.

Lee made the decision to "evaluate out" the May 2006 referral based on what was verbally communicated to him by the mandated reporter. Lee determined that the information reported to him by the mandated reporter was not sufficient to meet the definitions of physical abuse or neglect. Lee explained that he reached this conclusion because there was no evidence of "injury to the child" and no specific information regarding the alleged abuse. In short, he "didn't have enough information," and the "information that [he] tried to gather, the reporting party didn't know." Lee, therefore, "evaluated out" the May 2006 referral without performing an in-person investigation.

Lee completed the Emergency Response Referral Information form before he received the mandated reporter's written report. A date stamp on the written report suggests it was received by the county on May 16, 2006, about five days *after* Lee's supervisor approved the decision to "evaluate out" the May 2006 referral. The description of the incident in the written report includes details that were not included in the mandated reporter's verbal statement.

As the designated "person most knowledgeable" about training intake social workers, Sweet testified about the definition of "physical abuse." She testified that the perpetrator must have had an "intent" to physically harm the child. She testified that she could not say, without more information, whether a parent punching a child in the face

8

would meet the definition of physical abuse. However, she testified that it would be abuse for a parent to punch a child out of anger because the child threw something.

Sweet additionally testified that if a social worker does not believe the allegation in a referral meets the definitions of abuse or neglect, the worker is not required to cross-report the referral to law enforcement.

Relying on this evidence, Holman argued that there is a triable issue of material fact about whether the County performed its mandatory duty to evaluate and investigate the abuse alleged in the May 2006 referral. He argued that the County failed to satisfy its ministerial duty because the County (1) failed to complete the required forms, (2) used a legally incorrect definition of abuse, (3) failed to consider the additional information contained in the mandated reporter's written report, and (4) improperly delegated its duties to the mandated reporter.

Holman also argued that there is a triable issue of fact regarding whether the County breached a duty to cross-report the allegations to local law enforcement. He argued that cross-reporting is mandatory whenever an allegation meets the legal definition of abuse. Holman argued that the County used an incorrect legal definition of physical abuse and therefore failed to fulfill its mandatory duty.

In reply, the County argued that many of the issues raised by Holman were beyond the scope of the complaint and therefore irrelevant to the summary judgment analysis. In any event, the County argued, none of the issues raised created a material dispute of fact.

Before ruling on the motion, the trial court asked for supplemental briefing on whether discretionary immunity applies when a child abuse report contains an "admission" that a child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted non-accidentally upon the child by a parent or guardian. The County disputed the premise of the court's question, but argued that even if there was an admission, discretionary immunity would still apply to the County's decision to "evaluate out" the report. Holman argued that discretionary immunity would

9

not apply because county social workers have a mandatory duty to investigate and cross-report *any* referral in which a parent admits to "committing physical abuse against their child."

After taking the matter under submission, the trial court granted the County's motion for summary judgment. The court found that the County met its burden of demonstrating that Lee "fulfilled his ministerial duties" and was exercising his discretion when he decided to "evaluate out" the child abuse report. Thus, even if Lee erred in his application of the definition of abuse, his decision is protected by discretionary immunity.

Regarding the second cause of action, the trial court ruled that the statute (§ 11166, subd. (j)) demonstrates the Legislature did not intend to require county welfare departments to cross-report every referral " 'reported to it' " and that the statute "clearly exempts [referrals]" that are "unfounded or 'evaluated out.' "

In June 2024, the trial court entered a judgment of dismissal in favor of the County. Holman filed a motion for a new trial, which was denied. This appeal followed.

DISCUSSION

I

*Deficiencies in Holman's Appellate Briefs*

As a preliminary matter, we begin by noting the deficiencies in Holman's appellate briefs that have hindered our review in this case. Those defects include a failure to state each point under a separate heading (rule 8.204(a)(1)(B)); to support each point "by argument and, if possible, by citation of authority" (*ibid.*); and to provide an adequate "summary of the significant facts," supported by citations to the record.[3] (Rule

---

[3] These rules apply with equal force to self-represented litigants like Holman. (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205; accord, *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126 [" 'When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys. . . . [T]he in propria persona litigant is held to the same restrictive rules of procedure as an attorney.' "].)

8.204(a)(1)(C) & (a)(2)(C); *In re S.C.* (2006) 138 Cal.App.4th 396, 402; see *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 112; *Lopez v. C.G.M. Development, Inc.* (2002) 101 Cal.App.4th 430, 435; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267.)

Holman's opening brief also improperly attempts to raise new issues for the first time on appeal. The rule is well-settled that the theory upon which a case is tried must be adhered to on appeal. (*Trammell v. Western Union Telegraph Co.* (1976) 57 Cal.App.3d 538, 554-555.) A party cannot avoid summary judgment by relying on theories not alleged in the pleadings or argued to the trial court. (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 224.)

Here, Holman's primary arguments are the same as they were below: that there are triable issues of material fact as to whether the County violated mandatory duties by (1) determining the reported allegation did not meet the statutory definition of abuse, (2) failing to perform an in-person investigation of the allegation, and (3) failing to cross-report the allegation to law enforcement and the district attorney. However, Holman seeks to dress his old arguments in new clothing, by adding claims centered around his constitutional rights, the negligent undertaking doctrine, and a theory of gross negligence. In addition, he improperly seeks to bolster his claims with new evidence (a state audit report) that was not before the trial court when it decided the motion that is the subject of this appeal. (*Continental Ins. Co. v. Superior Court of Los Angeles County* (1995) 37 Cal.App.4th 69, 79.)

Although we have the discretion to strike Holman's opening brief and require him to file an amended version that corrects the errors, (rule 8.204(e)(2)), we have chosen instead to overlook many of the procedural defects and treat the brief as if it were properly prepared. However, in so doing, we shall disregard any points unsupported by legal analysis or authority, factual assertions unsupported by citations to the record, and

11

arguments or theories not alleged in the pleadings and presented to the trial court in connection with the motion for summary judgment.[4]

## II

## *Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  Under the summary judgment law (Code Civ. Proc., § 437c), any party to an action may move for summary judgment on a claim or defense.  (*Aguilar,* at p. 843.)  Generally, the court must grant the motion if the papers submitted show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)

To meet its initial burden on summary judgment, a moving defendant generally must show, by admissible evidence, that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense thereto.  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859.)  Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense.  (*Id*. at pp. 859-860.)  In opposing the motion, the plaintiff may not simply rely upon the allegations or denials of the pleadings.  (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201.)  The plaintiff must set

---

[4]     Holman filed a request for judicial notice on October 7, 2024, asking this court to take judicial notice of 10 documents, consisting of six documents that are already part of the record on appeal (Exhibits 1, 4, 5, 6, 7, 8, and 9), three published court opinions (Exhibits 2, 9, and 10), and one new document that was not presented to the trial court (Exhibit 3).  We deny the request as unnecessary to our decision.  (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 673; *Townsel v. Superior Court of Madera County* (1999) 20 Cal.4th 1084, 1087; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45.)

12

forth specific facts showing that a triable issue of material fact exists. (*Ibid.*) A genuine issue of material fact exists only if the evidence reasonably would permit a trier of fact, under the applicable standard of proof, to find the contested fact in favor of the party opposing the motion. (*Catholic Healthcare West v. California Ins. Guarantee Assn.* (2009) 178 Cal.App.4th 15, 23.)

On appeal from a grant of summary judgment, we independently review the record, applying the same process as the trial court to determine if there are genuine issues of material fact. (*Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1024.) In doing so, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the party opposing summary judgment. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493-494; accord, *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.)

### III

*Analysis*

In reviewing the propriety of an order granting summary judgment, we first identify the issues framed by the pleadings since it is these allegations to which the motion must respond. (*Lennar Northeast Partners v. Buice* (1996) 49 Cal.App.4th 1576, 1582.)

Holman's complaint alleges two causes of action against the County for failure to perform a mandatory duty under Government Code section 815.6. The first cause of action asserts two theories for relief. The first theory is that the County negligently failed to perform a mandatory duty under Welfare and Institutions Code section 16504 to evaluate the reported incident and complete the required forms. The second theory is that the County negligently failed to perform a mandatory duty under Welfare and Institutions Code section 328 to conduct an in-person investigation of the incident. The second cause of action alleges that the County negligently failed to perform a mandatory duty under

13

section 11166, subdivision (j), to cross-report the incident to law enforcement and the district attorney's office.

Because the County moved only for summary judgment, and did not move for summary adjudication in the alternative, the County must defeat both of Holman's causes of action to prevail. (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1527.) If a triable issue of material fact exists as to *either* cause of action, we must reverse the judgment. (*Samara v. Matar* (2017) 8 Cal.App.5th 796, 811; *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 949; *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1223, fn. 1.) As we will explain, we conclude that the trial court erred in granting summary judgment on the second cause of action and, therefore, reverse the judgment.

A. *The Government Claims Act*

To provide context for our analysis, we begin by briefly summarizing the governing legal principles under the Government Claims Act (the Claims Act; Gov. Code, § 810 et seq.).

Enacted in 1963, the Claims Act is a comprehensive statutory scheme governing the liabilities and immunities of public entities and employees. (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.) "Government Code section 815 is the 'policy cornerstone' of the act." (*Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 250.) It establishes the general rule that public entities are immune from tort liability except as provided by statute. (Gov. Code, § 815, subd. (a); *San Bernardino, supra*, 62 Cal.4th at p. 179.)

Relevant here, Government Code section 815.6 provides a statutory exception to the general rule of public entity immunity. (*San Bernardino, supra*, 62 Cal.4th at p. 179.) It provides: " 'Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable

14

diligence to discharge the duty.' " (Gov. Code, § 815.6; see Gov. Code, § 810.6 [defining " '[e]nactment' "].) As our Supreme Court has explained, Government Code section 815.6 has three discrete requirements that must be met to impose public entity liability: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of injury suffered by the plaintiff; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered. (*San Bernardino*, at p. 179.)

      B.     *Holman's Second Cause of Action*

In granting summary judgment on the second cause of action, the trial court ruled that (1) the County social worker was exercising his discretion when he "evaluated out" the mandated report because the allegations did not meet the definitions of abuse, (2) the social worker's decision to "evaluate out" the mandated report is entitled to discretionary immunity, even if erroneous, and (3) because the report was evaluated out, the County had no duty to cross-report it to law enforcement and the district attorney's office.

On appeal, Holman contends that the trial court erred in concluding that County social workers have discretion to decide whether a mandated report meets the statutory definitions of abuse. Citing *San Bernardino, supra*, 62 Cal.4th 168, Holman argues that when social workers receive a mandated report of suspected child abuse, section 11166, subdivision (j), imposes a *mandatory* duty to cross-report the alleged abuse to law enforcement and other agencies. We agree.

Whether an enactment creates a mandatory duty within the meaning of Government Code section 815.6 is a question of statutory interpretation for the courts. (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 631.) In divining legislative intent, we begin with the words of the statute because they usually provide the most reliable indicator of its purpose. (*Nunn v. State of California* (1984) 35 Cal.3d 616, 624; *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.)

As relevant here, section 11166, subdivision (j), provides: "A county probation or welfare department shall immediately, or as soon as practicably possible, report . . . to the law enforcement agency having jurisdiction over the case, to the agency given the responsibility for investigation of cases under Section 300 of the Welfare and Institutions Code, and to the district attorney's office every known or reasonably suspected instance of child abuse or neglect . . . ."

In our view, this language raises several questions relevant to this case. First, to trigger the cross-reporting duty under section 11166, subdivision (j), by whom must the abuse or neglect be "known or reasonably suspected," the person who made the referral or the county welfare agency that received it? Second, if the answer is the county welfare agency, to what extent does the duty to cross-report depend not just on receipt of the report, but its assessment or investigation of the allegations? Third, assuming the county welfare agency may "evaluate out" a report because it determines the allegations do not meet the definitions of abuse or neglect, is that determination a mandatory or discretionary activity?

In answering these questions, we are guided by our Supreme Court's opinion in *San Bernardino, supra*, 62 Cal.4th 168. Although that case did not analyze whether county welfare agencies have a mandatory duty to cross-report under section 11166, subdivision (j), it addressed a closely related question of whether law enforcement agencies have a mandatory duty to cross-report under section 11166, subdivision (k). (*San Bernardino,* at pp. 174, 180-186.)

In *San Bernardino, supra*, 62 Cal.4th 168, a private citizen called 911 to report an incident of suspected child abuse involving the child's father. (*Id*. at p. 174.) A deputy sheriff investigated the report and determined there was an ongoing custody dispute between the parents, the child was not a victim of abuse, and there was no need for further investigation. (*Ibid*.) Neither the sheriff's department nor the officer cross-reported the 911 report to the county child welfare agency. (*Ibid*.) Several weeks later,

16

the child suffered extensive head injuries during a visit with his father. (*Ibid*.) The child, through a guardian ad litem, sued the deputy sheriff and the county for failing to cross-report the initial child abuse allegations to the child welfare agency, in violation of sections 11166, subdivisions (a) and (k), respectively. (*San Bernardino,* at p. 174.) The trial court granted summary judgment for the defendants, and the Court of Appeal affirmed. (*Id*. at pp. 175, 177.)

The California Supreme Court affirmed in part and reversed in part. (*San Bernardino, supra*, 62 Cal.4th at p. 198.) The court held that the deputy sheriff dispatched to investigate the 911 report did *not* have a mandatory duty under section 11166, subdivision (a), to cross-report the incident to a county child welfare agency. (*San Bernardino,* at pp. 186, 197-198.) Even though the officer was a mandated reporter, the court held that the statutory scheme differentiates between those who make the initial report of suspected abuse and those who " 'come later' in performing . . . investigatory or prosecutorial functions." (*Id*. at pp. 188-189, 196.) As the individual designated to investigate the previously reported incident of suspected child abuse, the officer's findings, observations, and duties were not governed by section 11166, subdivision (a), but by the statutory provisions related to investigations. (*San Bernardino,* at p. 189.)

In contrast, our Supreme Court concluded that the sheriff's department *had* a mandatory duty under section 11166, subdivision (k), to cross-report the 911 report to other county child welfare agencies. (*San Bernardino, supra*, 62 Cal.4th at pp. 181-186.) In reaching this conclusion, the court noted that section 11166, subdivision (k), uses mandatory language, providing that the law enforcement agency "shall" report "every known or reasonably suspected instance of child abuse or neglect reported to it . . . ." (*San Bernardino,* at p. 182; see *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443.)

The Supreme Court additionally held that the determination of whether a reported incident involves child abuse or neglect is a mandatory, not a discretionary, function. It

explained: "The term 'child abuse or neglect' is clearly defined. [Citations.] Although in some instances it may require the exercise of judgment to identify whether a report involves child abuse or neglect, *such a determination does not involve the exercise of discretion*. Deciding if conduct falls into a defined category does not require the consideration of a host of potentially competing factors that is the hallmark of discretion." (*San Bernardino, supra*, 62 Cal.4th at p. 181, italics added; see *Barner v. Leeds* (2000) 24 Cal.4th 676, 684-685 [not all acts requiring a public employee to choose among alternatives entail the use of discretion].)

The California Supreme Court found further support for its conclusion in the legislative history of CANRA, noting that it reflects a legislative intent "to rectify the problem of inadequate child abuse reporting by mandating [reciprocal] cross-reporting between law enforcement and child welfare agencies." (*San Bernardino, supra*, 62 Cal.4th at p. 183.) The court quoted committee hearing testimony that the legislation was intended to require " 'alternative reporting in the sense that . . . if the police gets the report first, . . . they immediately advise [child welfare services], and vice [v]ersa. If [child welfare services] gets it, they immediately advise the police.' " (*Ibid*.) The court also quoted with approval the following passage from *Planned Parenthood, supra*, 181 Cal.App.3d at pages 259-260: " 'The child protective agency receiving the initial report must share the report with all its counterpart child protective agencies by means of a system of cross-reporting. An initial report to a probation or welfare department is shared with the local police or sheriff's department, and vice versa.' " (*Id*. at p. 183.)

Finally, the California Supreme Court criticized the Court of Appeal for having "incorrectly determined that a law enforcement agency's duty to cross-report under section 11166, subdivision (k) is contingent on its employee's duty, arising as a mandated reporter, to report and investigate under subdivision (a)." (*San Bernardino, supra*, 62 Cal.4th at p. 184.) The court held that the duties specified in each provision are "not dependent on each other." (*Ibid*.) A law enforcement agency's duty to cross-report an

18

initial report is separate from its investigative duties, and is "contingent only on *receipt* of a child abuse report." (*Id*. at p. 185.)

Because the sheriff's department had a mandatory duty to cross-report the initial 911 report, and it indisputably failed to perform that duty, the California Supreme Court concluded that the Court of Appeal erred in affirming summary judgment against the county. (*San Bernardino, supra*, 62 Cal.4th at pp. 175, 198.)

We find that the construction placed upon section 11166 by our Supreme Court in *San Bernardino, supra*, 62 Cal.4th 168, applies to this case and controls the outcome. The California Supreme Court's opinion makes clear that, in general, the duty to cross-report is triggered by receipt of a mandated child abuse report, since such reports are made only when the mandated reporter "knows or reasonably suspects" a child has been the victim of child abuse or neglect. (*Id*. at p. 185.) Although "in some instances" the agency may need to exercise "judgment" to identify whether a particular report involves child abuse or neglect, "such a determination does not involve the exercise of discretion." (*Id*. at p. 181.)

The County argues that *San Bernardino, supra*, 62 Cal.4th 168, is distinguishable because section 11166, subdivision (k), requires a law enforcement agency to cross-report every known or reasonably suspected instance of child abuse or neglect "reported to it," while section 11166, subdivision (j), requires county welfare departments only to report referrals that are determined to meet the statutory definitions of abuse or neglect. We are not persuaded. As our Supreme Court explained in *San Bernardino*, the purpose of CANRA is to protect children from abuse and neglect by mandating reciprocal cross-reporting duties. (*San Bernardino,* at p. 183; *James W. v. Superior Court of San Diego County* (1993) 17 Cal.App.4th 246, 254.) To that end, "the Legislature intended that the various law enforcement and child welfare agencies *immediately* communicate to each other information received on alleged child abuse or neglect so that they may in turn coordinate their investigative procedures." (*San Bernardino*, at p. 185, italics added; see

19

*Planned Parenthood, supra*, 181 Cal.App.3d at p. 259 [agency receiving the initial report must share the report with all its counterpart child protective agencies].) Thus, even though section 11166, subdivision (k), includes the term "reported to it," and section 11166, subdivision (j), does not, we conclude the intent of the provisions is the same: To require "[t]he agency that receives the initial report [to] share the information with [the] various other agencies." (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 779; accord, *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 141; *San Bernardino,* at p. 194.)

Moreover, the California Supreme Court unequivocally held that determining whether a reported incident meets the definitions of abuse or neglect is a ministerial or operational function, not a discretionary activity. (*San Bernardino*, *supra*, 62 Cal.4th at p. 181.) Accordingly, even if social workers are required to cross-report only those allegations determined to meet the definitions of abuse or neglect, there is still a triable issue of fact *in this case* as to whether the County violated a mandatory duty by failing to cross-report the referral. (*Id*. at pp. 180-186 [failure to cross-report can be the basis for imposing civil liability].)

We likewise reject the County's argument that the second cause of action fails because section 11166, subdivision (j), does not authorize a private right of action. As our Supreme Court explained in *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490: "If the predicate enactment is of a type that supplies the elements of liability under section 815.6–[that is,] if it places the public entity under an obligatory duty to act or refrain from acting, with the purpose of preventing the specific type of injury that occurred–then liability lies against the agency under section 815.6, regardless of whether private recovery liability would have been permitted . . . under the predicate enactment alone." (*Id*. at p. 500.) In such a scenario, "*[i]t is section 815.6, not the predicate enactment, that creates the private right of action*." (*Id*. at pp. 499-500.)

20

C.    *Conclusion*

Because we conclude there is a triable issue of fact as to whether the County breached a mandatory duty by failing to cross-report the May 2006 referral, we must reverse the judgment.  (*Wright v. Stang Manufacturing Co., supra*, 54 Cal.App.4th at p. 1223, fn. 1; *Samara v. Matar, supra*, 8 Cal.App.5th at p. 811.)  Accordingly, we need not decide whether the trial court properly ruled on the first cause of action.  (*Samara,* at p. 811.)  We note, however, that to the extent the trial court's ruling was predicated on the County having discretion to decide whether a reported incident meets the definitions of abuse, the ruling is inconsistent with the California Supreme Court's decision in *County of San Bernardino, supra*, 62 Cal.4th at page 181, as discussed above.  Whether county social workers have the discretion to "evaluate out" a referral *for other reasons*, such as collateral information invalidating the reported allegation, remains an open question.

## DISPOSITION

We reverse the summary judgment and remand for further proceedings consistent with this opinion.  Holman shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____,
                              Krause, J.

We concur:


_____,
Earl, P. J.


_____,
Hull, J.

21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| RYAN HOLMAN, | C101517 |
| Plaintiff and Appellant, | (Super. Ct. No. 20CV00578) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| COUNTY OF BUTTE, | |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on May 12, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

1

EDITORIAL LISTING

APPEAL from a summary judgment of the Superior Court of Butte County, Stephen E. Benson, Judge. Reversed and remanded with directions.

Ryan Holman, in pro. per., for Plaintiff and Appellant.

Porter Scott, William E. Camy, and Christopher M. Egan for Defendant and Respondent.

BY THE COURT:


_____\s_____
Earl, P. J.


_____\s_____
Hull, J.


_____\s_____
Krause, J.

2