Filed 2/3/26  C.T. v. County of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| C.T., | D085349 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00016689-CU-PO-CTL) |
| COUNTY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn Caietti, Judge.  Reversed.

Herman Law, Justin Felton and Sarah Serrano for Plaintiff and Appellant.

Office of County Counsel, Talia V. Edelman and Katie A. Richardson, Deputy County Counsel, for Defendant and Respondent.

INTRODUCTION

C.T. sued the County of San Diego (County) for negligence based on sexual abuse she alleged she suffered 50 years ago while in foster care.  She

asserted the County was liable because her social worker negligently placed her with her abuser, failed to adequately monitor her abuser while she was in his care, failed to create and implement reasonable polices to protect foster children in the foster care system, and failed to conduct a reasonable investigation and remove her from the foster home within a reasonable time after she reported the sexual abuse. She also alleged the County violated a mandatory statutory duty because it failed to cross-report her allegations to law enforcement. The County obtained summary judgment.

Because the alleged abuse took place so long ago, this case raises uniquely narrow issues. This is because much of the evidence about what happened no longer exists. The County destroyed relevant records in the ordinary course of business pursuant to Welfare and Institutions Code section 826 and Government Code section 68152. And many of the issues we address are specific to the laws and legal landscape that were in effect in the mid-1970s. For reasons we shall explain in detail below, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

C.T. was born in 1967. She was removed from her parents' care when she was approximately five years old. Throughout her childhood, she moved back and forth between her mother's care and various foster homes in San Diego County.

---

[1] Under the governing standard of review, we examine the evidence de novo and our account of the facts is presented in the light most favorable to C.T. (the nonmoving party) and, where the evidence is in conflict, assumes her version of all disputed facts is the correct one. (See *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 470; *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999.)

In 1975, when C.T. was about eight years old, she was placed in a foster home with M.P. and his wife for about four to six months. M.P. began sexually abusing her shortly after she was placed in his care, and she reported the abuse to her social worker during her second home visit. As explained by C.T. during her deposition, she told the social worker that M.P. was "touching me and hurting me," and she wanted to go back to her mother.

The social worker "immediately" spoke with C.T.'s foster mother. C.T. was in another room during this conversation, but she could overhear some of what they said through the wall. C.T. heard her social worker tell her foster mother about the allegations. She heard her foster mother say she did not believe the abuse occurred and tell the social worker that C.T.'s mother had told her that C.T. "makes up stories." The social worker then left without asking C.T. any additional questions.

C.T. subsequently told her aunt, mother, and grandmother about the abuse, but she did not know whether they spoke with the social worker. C.T. also did not know whether the social worker spoke with M.P.

M.P. continued abusing C.T. until the social worker visited again several weeks later and removed her from the home. By this time, C.T. believed M.P.'s wife had witnessed the abuse and no longer believed she was making it up. The social worker did not tell C.T. why she was removed.

During discovery, the County could not identify C.T.'s social worker. C.T.'s juvenile court and Health and Human Services Agency (HHSA) records were destroyed pursuant to Welfare and Institutions Code section 826 and Government Code section 68152. The County conducted a search of its other records and was unable to identify a foster parent named M.P. with a placement history during the relevant timeframe. And although C.T. remembered her social worker as "a middle-aged African American female"

3

named " 'Pam' or 'Pamela,' " the County needed a "last name, date of birth, and/or social security number" to identify a former employee during the relevant timeframe.

C.T. believed the social worker was employed by the County because she was living in San Diego when she was placed in foster care. She also believed her social worker was responsible for placing her in M.P.'s home.

In May 2022, C.T. sued the County for negligence based on the sexual assaults that continued after she reported the sexual abuse to her social worker. Relevant here, the operative complaint (FAC) alleged the County was (1) directly liable for negligence under Government Code section 815.6 "for its failure to discharge mandatory duties set forth in . . . Penal Code section[ ] . . . 11166" and various other statutes, and (2) vicariously liable for negligence committed by C.T.'s social worker pursuant to sections 815.2 and 820.

In April 2024, the County moved for summary judgment based on several independent grounds. First, the County asserted it was not directly liable for failure to perform a mandatory duty because the statutory duties identified in the FAC all arose out of statutes that did not exist in the 1970s. Second, the County asserted it was not vicariously liable because the decisions of government-employed social workers and independent contractors "relating to the investigation of child abuse and removal of a minor from a home" are discretionary decisions subject to immunity under Government Code section 820.2. Third, the County asserted that C.T. failed to identify a County employee and her abuser with sufficient specificity to establish the County owed a duty of care to her. Finally, the County asserted the statute of limitations barred C.T.'s suit.

4

The trial court granted the County's motion in August 2024 based on its first two contentions. The court ruled that direct liability for failure to perform a mandatory duty was precluded because C.T. did not allege the County violated a statute that was in effect in 1975 (or 1976 or 1977). The court further ruled that vicarious liability for negligence on the part of the social worker was precluded because the County was immune from liability pursuant to Government Code section 820.2 "for alleged negligence in investigating reports of child abuse." The court did not reach the County's other contentions.

DISCUSSION

C.T. contends the trial court erred when it granted summary judgment for the County. Based on our independent review, we conclude the court correctly ruled that C.T.'s direct liability claim against the County failed as a matter of law because the FAC did not identify a statute that was in effect during the relevant period. We further reject C.T.'s contention—made for the first time on appeal—that a predecessor statute created a mandatory duty that obligated the County to cross-report suspected child sexual abuse reported to the County's social workers. This contention is both forfeited and incorrect on the merits.

We are compelled, however, to conclude that the County did not meet its summary judgment burden to establish it was immune from vicarious liability for C.T.'s negligence claim under Government Code sections 815.2 and 820.2. And because we disagree there are alternate grounds for affirming the judgment, we reverse the trial court's grant of summary judgment.

5

# I.

## *Standard of Review*

Our review is de novo.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  "[W]e essentially step into the shoes of the trial court, using the same method to evaluate the parties' arguments and applying the same rules" on a summary judgment motion.  (*D.G. v. Orange County Social Services Agency* (2025) 108 Cal.App.5th 465, 470 (*D.G.*).)

By statute, summary judgment may only be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may bring a motion on the ground the plaintiff cannot prove one of the required elements of the case or there is a complete defense to the action.  (*Id.*, subds. (o)(1), (2) & (p)(2).)  "Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law."  (*Guz, supra*, 24 Cal.4th at p. 334.)

"Under our de novo standard of review, when reviewing the grant of summary adjudication, we must independently determine the construction and effect of the facts presented to the trial court as a matter of law."  (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 38.)  "We [also] liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

II.

*No Triable Issue of Material Fact to Support C.T.'s Direct Liability Claim*

In California, governmental tort liability is based exclusively on statute. (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179 (*B.H.*).) Except as otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Here, as noted, the FAC alleged the County was directly liable for negligence under section 815.6, which is one of the statutory exceptions to the general rule of governmental immunity.

Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Section 815.6 thus "has three elements that must be satisfied to impose public entity liability: (1) a mandatory duty was imposed on the public entity by an enactment; (2) the enactment was designed to protect against the particular kind of injury allegedly suffered; and (3) the breach of the mandatory statutory duty proximately caused the injury." (*B.H., supra*, 62 Cal.4th at p. 179.) The first element is at issue here.

As noted, the trial court ruled that C.T.'s claim against the County for direct liability failed as a matter of law because she failed to identify a statute imposing a mandatory duty that was in effect during 1975 to 1977, the relevant period. The court's ruling was correct and based on an obvious principle of law: To state a cause of action for violating a mandatory duty imposed by a statute or regulation, a plaintiff must identify the applicable

7

statute or regulation the government is alleged to have violated. (*Brenneman v. State of California* (1989) 208 Cal.App.3d 812, 817.)

C.T. does not directly argue the trial court's ruling on this point was wrong. Rather, for the first time on appeal, she identifies former Penal Code section 11161.5 as a statute which, in her view, imposed a mandatory duty on the County, from 1975 to 1977, "to cross-report allegations of child abuse to local law enforcement" whenever a County-employed social worker "knows or reasonably suspects" child sexual abuse. She contends reversal of summary judgment is required because the FAC identified section 11166 as a basis for direct liability against the County and former section 11161.5 is a predecessor statute. Specifically, she contends the legislative history of section 11166 "reveals that it was first enacted as . . . section 11161.5, before being *reenacted* in 1980."

C.T. has forfeited this theory of liability. While it is true that former Penal Code section 11161.5 is a predecessor statute to section 11166, the reenactment was not a mere recodification. (See *Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1216–1217; Stats. 1980, ch. 1071, §§ 4–5, pp. 3420, 3422–3426.) The changes to the statutory scheme, including to former section 11161.5, were major ones that fundamentally altered the circumstances when mandatory reports of potential child abuse are required. (*B. H.*, *supra*, 62 Cal.4th at pp. 182–183 [describing the new scheme as an "overhaul"].) Here, C.T. not only failed to identify former section 11161.5 in the FAC, she failed to identify it during summary judgment proceedings in the trial court despite being given an extra chance to do so in supplemental briefing. "[P]ossible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal."

8

(*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.)

But even putting forfeiture aside, we conclude former Penal Code section 11161.5 did not impose a mandatory duty on the County to report allegations of child sexual abuse to law enforcement when such abuse should have been "reasonably suspect[ed]" by its social workers, as asserted by C.T. The first element of liability under Government Code section 815.6 "requires that the enactment at issue be *obligatory,* rather than merely discretionary or permissive, in its directions to the public entity; it must *require,* rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498. (*Haggis*).) Significant here, although the use of the word "shall" in a statute or regulation may indicate legislative intent to create a mandatory duty, such word choice is not dispositive. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898–899.) To be "mandatory" within the meaning of Government Code section 815.6, "[i]t is not enough . . . that [a] public entity or officer [be] under an obligation to perform a function if the function itself involves the exercise of discretion." (*Haggis*, at pp. 507, 498.) Thus, an enactment does not create a mandatory duty within the meaning of Government Code section 815.6 if it requires action only if government staff have made a subjective decision that depends on "judgment, expertise, and discretion." (*Haggis*, at p. 507.) This is because "[t]he very essence of discretion is the power to make 'comparisons, choices, judgments, and evaluations.' " (*Braman v. State of California* (1994) 28 Cal.App.4th 344, 351.)

Applying these principles, former Penal Code section 11161.5 cannot serve as a predicate for liability under Government Code section 815.6 under

9

the circumstances at issue here.[2]  As we read the statute, it obliged the County to cross-report child sexual abuse reported to its social workers only if its staff concluded the abuse had actually occurred, a determination that necessarily depends on judgment, expertise, and discretion.

From 1975 to 1977, former Penal Code section 11161.5 imposed a reporting obligation, in relevant part, on individual mandatory reporters as follows:  "[I]n any case in which a minor is observed by . . . any social worker, and it appears to the . . . social worker from observation of the minor . . . that the minor *has been* sexually molested, . . . he shall report such fact by telephone and in writing, within 36 hours, to both the local police authority having jurisdiction and to the juvenile probation department; or, in the alternative, either to the county welfare department, or to the county health department."  (Former § 11161.5, italics added; see Stats. 1974, ch. 348, § 1, pp. 679–680; Stats. 1975 ch. 226, §1, pp. 608–609; Stats. 1976 ch. 242, § 1, pp. 459–460.)  The statute imposed a cross-reporting obligation, in relevant part, on the County as follows, "Whenever it is brought to the attention of a director of a county welfare department or health department that a minor . . . *has been* sexually molested, . . . he shall file a report without delay with the local police authority having jurisdiction and to the juvenile probation department as provided in this section."  (Former § 11161.5, italics added; see

---

[2]    We address the County's cross-reporting obligation under former Penal Code section 11161.5 when it received a report of child sexual abuse through an employee, which is the only circumstance presented here.  We do not address whether the County may have had a mandatory duty to cross-report when it received a report of child sexual abuse from a mandatory reporter who was not an employee.

Stats. 1974, ch. 348, § 1, pp. 679–680; Stats. 1975 ch. 226, §1, pp. 608–609; Stats. 1976 ch. 242, § 1, pp. 459–460.)

Despite this clear language, C.T. contends former Penal Code section 11161.5 imposed a mandatory reporting obligation on the County to report *allegations* of child sexual abuse made to its social workers whenever it was reasonable, *based on an objective standard*, to *suspect* the abuse occurred. As a consequence, she reasons, the duty to cross-report imposed by former Penal Code section 11161.5 did not involve judgment or discretion, and was therefore mandatory within the meaning of Government Code section 815.6. We cannot agree with this interpretation of the statute.

Our high court, in 1975, held the reporting obligation placed on individual social workers (and other mandatory reporters) by former Penal Code section 11161.5 was to report child sexual abuse which, in the reporter's subjective opinion, had actually occurred. (See *Landeros v. Flood* (1976) 17 Cal.3d 399, 415.) Only then, and only if a report was made to the director of the welfare department or the health department, did former Penal Code section 11161.5 impose an obligation on counties, through their officers, to cross-report to law enforcement. The plain language of the statute thus required a cross-report by the County only when a minor had in fact been abused. County welfare and health department directors were required to report when "a minor . . . *has been* sexually molested." (Former Pen. Code, § 11161.5, italics added.) Based on this plain language, in the case of allegations of sexual abuse made to social workers employed by the County, it is clear the County was not required to cross-report unless someone, either a staff social worker or a director, substantiated the allegations. As we have explained, an enactment that imposes a duty that is contingent on this type of subjective evaluation, i.e., one that involves "judgment, expertise, and

11

discretion," does not create a mandatory duty within the meaning of Government Code section 815.6.  (*Haggis, supra,* 22 Cal.4th at p. 507.)

C.T. points out that Penal Code section 11166, *the statute that is in effect today*, has been held to create a mandatory duty under Government Code section 815.6 because it requires agencies to cross-report " 'every known or suspected' " instance of child sexual abuse " 'which is alleged' " to have occurred under certain specific circumstances.  (*B.H., supra*, 62 Cal.4th at p. 181, italics omitted; see *id.* at pp. 180–186.)  But similar language appears nowhere in former Penal Code section 11161.5.  In fact, the Legislature specifically drafted Penal Code section 11166 "to rectify the problem of inadequate child abuse reporting [and] to broaden the circumstances under which reporting is required," and did so to ensure that cross-reporting among government agencies and mandatory reporting by individuals no longer occurred based on a subjective standard.  (*B.H.*, at p. 193; *id.* at pp. 180–183, 193–194.)  Obviously, a reporting requirement that did not exist when C.T. told her social worker she was being abused cannot be the basis for liability.  Thus, even if not forfeited, we would affirm the trial court's summary adjudication of C.T.'s direct liability claim in favor of the County.

III.

*The Trial Court Erred When It Ruled the County Was Immune from C.T.'s Vicarious Liability Claim*

C.T. contends the trial court erred when it summarily adjudicated the County's immunity defense in favor of the County.  We agree.  Based on our independent review, the County failed to sustain its burden of proving the nonexistence of any triable issue of material fact as to its affirmative defense of discretionary act immunity.  (Code Civ. Proc., § 437c, subd. (p)(2).)  The County failed to make the required showing that C.T.'s social worker, or any

12

other employee, "exercised discretion" with respect to the acts and omissions alleged by C.T. to have been negligent.  (*Johnson v. State of California* (1968) 69 Cal.2d 782, 794, fn. 8 (*Johnson*).)

Defendants moving for summary judgment on an affirmative defense bear "an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  If the defendant carries this initial burden, the burden then shifts to the plaintiff to make a "prima facie showing of the existence of a triable issue of material fact." (*Ibid*.)  "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.)  The ultimate burden of persuasion lies on the defendant to "present evidence that would *require* a reasonable trier of fact to find any underlying material fact [in its favor] more likely than not." (*Ibid*.)  A defendant moving for summary judgment has the burden to show it is entitled to judgment with respect to *all* theories of liability asserted by the plaintiff in the operative complaint.  (*Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 717.)

As noted, C.T.'s second claim for liability is based on Government Code[3] section 815.2, subdivision (a).  This subdivision provides that a public entity may be derivatively liable for injuries caused by its employees as follows: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given

---

[3]    Undesignated statutory references, from this point forward, are to the Government Code.

rise to a cause of action against that employee or his personal representative." (§ 815.2, subd. (a).)

C.T.'s specific theory for vicarious liability is based on her allegation that she was in a "special relationship" with the County as a foster child during her childhood, one she contends imposed a duty on the County to take reasonable measures to protect her from reasonably foreseeable intentional child sexual abuse. "As a general matter, there is no duty to protect against the criminal conduct of a third party, but an important exception exists when there is a special relationship between the plaintiff and defendant." (*D.G.*, *supra*, 108 Cal.App.5th at p. 471.) "A typical setting for the recognition of a special relationship is where the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 621 [cleaned up].) Here, the FAC alleges the County is vicariously liable to C.T. in negligence based on a broad spectrum of acts and omissions by its employees. It alleges the County's employees negligently failed to protect her from foreseeable sexual abuse by (1) placing her under M.P.'s care, (2) failing to adequately monitor and supervise her care, (3) failing to create and implement reasonable polices to protect foster children in the foster care system, and (4) failing to conduct a reasonable investigation and timely remove her from M.P.'s care after she reported he was abusing her.

The County moved for summary judgment against C.T.'s vicarious liability claim on several grounds, including that it was immune from liability because the allegedly negligent acts and omissions of C.T.'s social worker and its other employees were based on an exercise of discretion within the meaning of section 820.2. Subject to certain exceptions, section 820.2

14

provides that a public employee is immune from liability "for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion [was] abused." Section 815.2, subdivision (b), in turn, provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." The successful assertion of discretionary act immunity by the government with respect to an employee thus shields the government from vicarious liability based on the acts or omissions of that employee. (*Johnson, supra*, 69 Cal.2d at p. 787.)

The County supported its motion with excerpts from C.T.'s deposition testimony and discovery responses about her social worker. As we have recounted, C.T. believed her social worker, possibly named Pam or Pamela, worked for the County and was responsible for placing her in M.P.'s care. During the social worker's second visit, C.T. complained that M.P. was touching and hurting her. The social worker immediately informed M.P.'s wife about the allegations and M.P.'s wife told the social worker she did not believe they were true. A few weeks later, the social worker removed C.T. from the foster home. The social worker did not tell C.T. why she was removed. This is all the information we have about the social worker's acts and omissions. We have no information at all about acts and omissions by any other County employees.

To assess whether a decision by a public employee is subject to discretionary act immunity, we engage in a two-part inquiry. (*D.G., supra*, 108 Cal.App.5th at p. 473.) First, we decide whether the decision at issue is a discretionary one, as opposed to a ministerial or operational one. In this context, the word "discretion" does not have its literal meaning. (*Johnson*,

*supra*, 69 Cal.2d at pp. 787–788.)  Discretionary act immunity applies to "fundamental decisions within the executive or administrative authority of [an] agency or official."  (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 983, fn. 5 (*Caldwell*.)  To be subject to immunity, the decision must rise to the level of a "basic policy decision[ ]" that has been "committed to [a] coordinate branch[ ] of government," and is sufficiently sensitive to justify a blanket rule that courts "will not entertain a tort action alleging that careless conduct contributed to the governmental decision."  (*Johnson,* at pp. 793–794, italics omitted.)

Second, and critical here, we decide whether the governmental employee "actually reached a considered decision knowingly and deliberately encountering the risks that g[a]ve rise to [the] plaintiff's complaint." (*Johnson*, *supra*, 69 Cal.2d at p. 794, fn. 8.)  "[T]o be entitled to immunity the state must make a showing that . . . a policy decision, consciously balancing risks and advantages, took place."  (*Ibid.*)  "[A] strictly careful, thorough, formal, or correct evaluation" is *not* required.  (*Caldwell*, *supra*, 10 Cal.4th at p. 983, italics omitted.)  But an "actual, conscious, and considered" decision is required.  (*Id.* at p. 984, italics omitted.)  The requirement that a considered decision in fact take place for immunity to attach exists because "[i]mmunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government."  (*Johnson*, at p. 794, fn. 8.)

These principles compel us to conclude that the County failed to adduce sufficient evidence to satisfy its burden of proving, for each theory of liability asserted by C.T., that C.T.'s social worker, or any other County employee, acted or failed to act based on the type of "considered decision" that is

potentially entitled to immunity under section 820.2. (*Johnson*, *supra*, 69 Cal.2d at p. 794, fn. 8.) The trial court erred when it ruled otherwise.[4]

At the outset, the FAC alleges negligence by the County's employees when placing C.T. in M.P.'s home, when deciding how much to supervise her while she was there, and when creating and implementing policies to protect foster children in the foster care system. For these theories of recovery, the County unquestionably failed to meet even its initial burden of producing evidence that a County employee exercised considered discretion when acting or failing to act. We know literally nothing about these decisions.

The FAC also alleges C.T.'s social worker was negligent because, in C.T.'s view, she failed to conduct a reasonable investigation and timely remove C.T. from M.P.'s care when C.T. reported he was abusing her. This theory of recovery is the parties' focus. Here, we also agree with C.T. that the County failed to make the required showing that her social worker made considered decisions when deciding whether to investigate her allegations and whether to leave her in M.P.'s care.

According to the entirety of the County's evidence on this point, after C.T. reported the abuse to her social worker, she overheard the social worker tell M.P.'s wife about the allegations, she heard M.P.'s wife say she did not

---

[4]    Because we conclude the County failed to sustain its burden on this element, we do not reach the complicated questions the parties have raised about the scope of discretionary act immunity in the context of the foster care system that was in place in the 1970s. (See generally, *K.C. v. County of Merced* (2025) 109 Cal.App.5th 606, 617–619, review granted June 25, 2025, S290435 [holding discretionary immunity and derivative public entity employer immunity apply broadly to social workers' decisions relating to placements in the foster care system and reports of abuse by foster children in the 1970s]; *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1056–1058 [holding immunity does not apply in this context].)

17

believe them, and the social worker left without asking C.T. further questions. That's it. C.T. was unable to hear anything else. We do not know whether the social worker questioned M.P.'s wife about the possible abuse or just told her about it. We do not know how long she spoke with M.P.'s wife before she left. We also do not know why the social worker left without taking C.T. For all we know, she may have left without taking action because she was late for another appointment.

This exceptionally sparse evidence is insufficient to *require* a reasonable trier of fact to find that C.T.'s social worker made a considered decision in response to C.T.'s report, which is the relevant burden. It is possible the social worker made a considered decision to leave C.T. in M.P.'s care. But it is also possible the social worker made an unconsidered decision to take no action with respect to C.T.'s report for myriad reasons that do not involve "consciously balancing risks and advantages." (*Johnson*, *supra*, 69 Cal.2d at p. 794, fn. 8.) For example, she may have meant to follow up later in the day and forgotten, or she may have unethically wanted to avoid the additional work that an investigation and potential removal would entail.

The County argues summary adjudication is warranted based on circumstantial evidence of what happened after the social worker left the foster home. It contends there can be no material dispute that C.T.'s social worker must have decided to investigate the allegations at some point during her second visit, or thereafter, and then come to a considered decision to take action. In its view, a considered decision by the social worker is the only reasonable inference from the circumstantial evidence because, by the time of her third visit, the social worker necessarily had to have made a "judgment call" to remove C.T. from the foster home. We are not persuaded by this somewhat circular logic.

18

Here again, it is *possible* C.T. was removed from M.P.'s care after the social worker investigated and made a considered decision that she should be removed. But the evidence allows for other possible scenarios as well. According to C.T., she and her brothers had scheduled visitations with their biological family while she was in foster care at M.P.'s home and C.T. reported the abuse to her mother and grandmother. It is then possible C.T. and her brothers were ordered removed as a result of a request by her family to the superior court in dependency proceedings. It is also possible they were removed as a result of a report by the family to law enforcement. It is also another possibility that C.T. was removed at the request of M.P. and his wife. C.T. believed M.P.'s wife witnessed the sexual abuse shortly before C.T.'s social worker arrived and took her away. The County cannot obtain summary judgment on its immunity defense on the ground that it is *possible* that C.T.'s social worker *may have* rendered a considered decision to investigate C.T.'s allegations and remove her from M.P.'s care.

Finally, it is not clear whether the County contends it is entitled to summary judgment based on a presumption, pursuant to Evidence Code section 664, that C.T.'s social worker conducted a reasonable investigation. Its brief on appeal mentions the presumption twice but without any meaningful analysis. But to the extent the County so contends, the argument is not sufficiently developed for us to address it. Evidence Code section 664 provides, "It is presumed that [an] *official* duty has been regularly performed." (Italics added.) The County has not identified a statute or regulation in effect in 1975, 1976, or 1977, or other source of an official duty, that required county social workers to investigate allegations of child abuse at that time.

19

In conclusion, we observe the instant case is noteworthy for the remarkable lack of evidence in the record about critical, material acts by the County's employees and the decisions that led to them. Because the burden of production and proof was on the defendant, we are compelled by this lack of evidence to conclude the trial court erred when it summarily adjudicated the affirmative defense of discretionary act immunity in the County's favor. Our determination that the County failed to satisfy *its* burden of proof here, however, should not be misinterpreted to speak to the question whether C.T. is likely to be able to prove *her* affirmative claims at trial, where *she* will bear the burden of proof in the face of the same striking lack of evidence. The County did not move for summary adjudication on the ground that C.T. would be unable to prove the County's employees acted unreasonably in breach of their alleged duty to protect her, so we have no occasion to address this question and we express no opinion on the merits of her affirmative claim for relief.

IV.

*No Affirmance on Alternate Grounds*

The County contends it is entitled to summary judgment on alternate grounds not reached by the trial court. It contends C.T. "does not possess and cannot reasonably obtain . . . evidence" needed to prove an essential element of the tort of negligence. (*Aguilar*, *supra*, 25 Cal.4th at p. 854.) The County claims she will not be able to prove she was in the County's custody when she was sexually assaulted and will therefore be unable to prove the County had a special relationship with her and duty to protect her from intentional criminal actions of third parties. This argument fails to persuade us.

C.T. testified she was first removed from her family when she was five years old. She spent time at the Hillcrest Receiving Home. She was then

20

placed in and out of foster care in San Diego County throughout her childhood. Based on her experience, it was her understanding, by the time she was an adult, that she had been in the County's care system, although she did not know for certain whether her social worker worked or also worked for a foster family agency, nonprofit organization, school, or religious organization.[5] The County's record search determined that juvenile court records and HHSA records once existed for C.T., but they were destroyed. This evidence is sufficient to support a preponderance-of-the-evidence finding by a reasonable trier of fact that C.T. was, in fact, in foster care under the custody of the County.

The County's evidence to the contrary creates a triable issue of material fact. The County was unable to locate records confirming there was a certified foster parent named M.P. in San Diego County during the relevant period. It was also unable to identify a social worker named Pam or Pamela without more information. This evidence is insufficient to *require* a trier of fact to conclude C.T. failed to demonstrate she was in San Diego's foster care system, particularly given that many of the County's records from this era have been destroyed.

The County argues the evidence was insufficient because, since juvenile court and HHSA records are created under circumstances other than dependency proceedings, the fact there are records for C.T. in its system does not definitely prove C.T. was in foster care. But C.T. is required to prove she

---

[5] Although C.T. responded "Yes" when asked if her social worker "was working for the State of California," it is clear from context she meant her social worker was working *in* the State of California. When asked in the very next question how she knew, she responded, "I know that as an adult because I was in San Diego foster care and she was my social worker."

was in foster care only by a preponderance of the evidence, and this is not the only evidence she was in the County's custody. Based on 13 years of being "in and out" of foster care, C.T. testified it was her understanding by the time she was an adult that she was in the County's child welfare system.

The County also argues that C.T. may not have been in San Diego County foster care because "the child welfare landscape looked considerably different fifty years ago." But the County fails to offer details and evidentiary support for this contention. The County cites to an Attorney General opinion and a law review article, and to case law and statutes that were mostly enacted or decided long after C.T.'s alleged abuse.

Finally, the County contends that plaintiffs seeking to hold government entities liable on a vicarious liability theory must identify an employee with specificity. This contention lacks merit. As explained by the County's own authority, plaintiffs are required to establish only that "some employee" in the scope of employment committed the wrongful act. (*Perez v. City of Huntington Park* (1992) 7 Cal.App.4th 817, 820.) We conclude there are no alternative grounds to affirm.

DISPOSITION

The judgment is reversed.  C.T. is awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

DO, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.